## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ENNIS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0870-K |
| | § | |
| GILDAN ACTIVEWEAR SRL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Ennis, Inc.'s Motion to Vacate Arbitration Award (the "Motion to Vacate") (Doc. No. 16) and Defendant's Motion to Confirm Arbitration Award and Response to Plaintiff's Motion to Vacate Arbitration Award (the "Motion to Confirm," and, collectively with the Motion to Vacate, the "Motions") (Doc. No. 21). After considering the Motions, briefs in support, responses, and replies, the Court **DENIES** the Motion to Vacate and **GRANTS** the Motion to Confirm. Because Ennis, Inc. has not carried its burden to prove that the arbitrator exceeded his powers in issuing his arbitration award, the Court must confirm the arbitration award pursuant to 9 U.S.C. § 9 (2012). As to Gildan Activewear SRL's request for its attorneys' fees and costs incurred in responding to the Motion to Vacate, the Court defers ruling on this request and **ORDERS** Gildan Activewear SRL to file supplemental briefing in support of its request for attorneys' fees and costs.

## I.  Factual and Procedural Background

The dispute between the parties involves an arbitrator's interpretation of a contract that provided for a payment to a former employee if that employee was terminated shortly before, during, or shortly after a change in control of a company. Since arbitration, the parties have conceded that they do not dispute any of the material facts underlying the contract dispute. Furthermore, a court's deferential review of an arbitration award means that a court will generally not replace the arbitrator's factual findings with its own. *See Delek Ref., Ltd. v. Local 202, United Steel*, 891 F.3d 566, 570 (5th Cir. 2018) ("This deference means that even if we believe the arbitrator seriously erred in his fact finding or contract interpretation, we will uphold a decision that is rationally inferable from the purpose of the CBA." (citation omitted)). Therefore, the factual background is less important to the Court's analysis in this Order, at least as compared to the arbitration proceeding, and the Court adopts the arbitrator's factual findings.

The primary contract at issue in this case is the Amended and Restated Executive Employment Agreement (the "Employment Agreement") originally entered into by Plaintiff Ennis, Inc. ("Ennis") and a former employee of Ennis, Irshad Ahmad ("Ahmad"). The Employment Agreement provided that if Ennis experienced a "Change of Control Event"—a term defined in the Employment Agreement that encompasses events where the ownership or leadership of Ennis changes significantly—and Ahmad's employment was terminated within a certain period of time before, during, or after the

Change of Control Event, then Ennis would owe Ahmad a severance payment. Ennis was Ahmad's employer at the time the two entered into the Employment Agreement, and Ahmad served as an executive within Alstyle Apparel, LLC ("Alstyle"), a subsidiary of Ennis.

In late 2015 or early 2016, Ennis sought to sell Alstyle. Ahmad and another investor were originally interested in acquiring Alstyle, so, after Ennis, Ahmad, and the other investor reached a potential agreement, Ennis agreed to assign the Employment Agreement to A AND G, Inc. ("A&G"), a wholly owned subsidiary of Alstyle. Ennis and A&G signed the Assignment and Assumption Agreement (the "Assignment") on April 1, 2016. The Assignment stated that Ennis "assigned, granted, conveyed and transferred to [A&G] all of [Ennis's] right, title and interest in and to the . . . Employment Agreement, and [A&G] accepted such assignment and assumed all of [Ennis's] duties and obligations under the . . . Employment Agreement."

The sale of Alstyle to Ahmad and his investor–partner never occurred because Defendant Gildan Activewear SRL ("Gildan") made a superior offer to Ennis. Ennis exercised its right to terminate the transaction with Ahmad and his investor–partner, and Ennis then entered into the Unit Purchase Agreement (the "Purchase Agreement") with Gildan. Gildan acquired Alstyle through the Purchase Agreement for $110 million.

Recognizing the liability that a potential severance payment to Ahmad might pose if Gildan chose to terminate Ahmad within the relevant timeframe after its

acquisition of Alstyle, Gildan and Ennis contracted for such issues in Section 5.10 of the Purchase Agreement, which is entitled "Irshad Ahmad." Section 5.10(b) of the Purchase Agreement provides that Ennis would indemnify Gildan for liabilities related to the Employment Agreement that might arise within one year of the closing date for the sale of Alstyle to Gildan. Such indemnification was subject to the procedures of Section 8.05(a) of the Purchase Agreement, which provides, *inter alia*, for notice to Ennis as part of the indemnification process.

The last relevant contract that accompanied the sale of Alstyle to Gildan was the Escrow Agreement, which provided that $2 million would be held in escrow in case any potential liability related to Ahmad arose.

Gildan terminated Ahmad within the relevant timeframe that, under the Employment Agreement, would entitle Ahmad to his severance payment. Gildan paid just over $2 million to Ahmad and then applied for reimbursement of almost $2 million from the escrow funds. Gildan did not provide Ennis notice prior to its payment of Ahmad. Upon application for reimbursement, Ennis objected, and arbitration between Ennis and Gildan commenced.

Ennis took three positions in arbitration. The first, and primary, position was that Gildan was not entitled to reimbursement from the escrow funds because no "Change of Control Event" occurred, and, consequently, Ahmad was not entitled to the severance payment due under the Employment Agreement. The second and third positions Ennis took in arbitration relate to its first position. Ennis's second position

was that it was prejudiced by Gildan's failure to provide notice that Ahmad made a claim for his severance payment upon his termination, as Ennis could have contested Ahmad's claim to the severance payment had it received notice. Finally, Ennis argued that Gildan was not entitled to the escrow funds as reimbursement for the severance payment made to Ahmad because a condition precedent under the Escrow Agreement for release of the funds to Gildan had not occurred.

Ennis's argument for why a "Change of Control Event" did not occur is a dispute of contractual interpretation concerning the Employment Agreement. Ennis's argument to the arbitrator proceeded as follows: The Employment Agreement defines "Company" to mean "Ennis." A "Change of Control Event" involves defined types of changes to the ownership or leadership of the "Company"—i.e., Ennis. By the terms of the Assignment, A&G assumed all of Ennis's duties and obligations under the Employment Agreement. While A&G is responsible for the duties and obligations Ennis formerly owed Ahmad under the Employment Agreement, the definition of "Company" (Ennis) under the Employment Agreement did not change, at least for purposes of what constitutes a "Change of Control Event," because an assignment only changes who benefits from or performs an obligation, not the nature of the obligation itself. Therefore, Ennis argued that Gildan's acquisition of *Alstyle*, of which A&G is a wholly owned subsidiary, did not constitute a "Change of Control Event" because the ownership or leadership of *Ennis* did not change. As such, Ahmad was not entitled to his severance payment when he was terminated after Gildan's acquisition of Alstyle.

Gildan took a different position. Gildan recognized that the Assignment neither enlarges nor restricts any of the obligations owed by A&G, but because *A&G* should be the relevant "Company" throughout the Employment Agreement, the Employment Agreement (which uses the term "Company" more than 150 times) provides that a "Change of Control Event" for *A&G* results in Ahmad's entitlement to a severance payment. Gildan argued that such an interpretation of the Employment Agreement gives consistency to the term "Company" throughout the Employment Agreement and provides that the same entity whose acquisition would trigger a "Change of Control Event" would also be financially responsible for the severance payment.

In his Partial Final Award, the arbitrator first found that Ennis was obligated to reimburse Gildan for the severance payment because the acquisition of Alstyle (and, by virtue of being a wholly owned subsidiary, A&G) by Gildan constituted a "Change of Control Event." Second, the arbitrator found that Gildan's failure to notify Ennis of Ahmad's claim to the severance payment did not preclude Gildan from prevailing. Under Section 8.05(a) of the Purchase Agreement, Gildan's failure to give notice relieves Ennis of its indemnification obligations only to the extent Ennis forfeits rights or defenses because of the failure to give notice. Because arbitration provided Ennis an opportunity to argue its position concerning the lack of a "Change of Control Event," Gildan's failure to provide notice did not preclude an arbitration award in Gildan's favor. Finally, in the separate Final Award, the arbitrator found that Gildan was entitled to the escrow funds because the severance payment was a "Liability" related to the

Employment Agreement for which Ennis agreed to indemnify Gildan, and the arbitration decision that a "Change of Control Event" had occurred constituted a final adjudication of a "Claim."

Ennis filed this case in this Court on April 10, 2018 and moved to vacate the arbitration award on October 29, 2018. The parties agreed to consolidate the briefing, as Gildan moved to confirm the arbitration award while responding to Ennis's Motion to Vacate. Having received a response and reply to both Motions, the Motions are now ripe for consideration.

## II.    Applicable Law

"[J]udicial review of an arbitration award is extraordinarily narrow." *YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 819 (5th Cir. 2019) (quoting *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990)); *see also Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385 (5th Cir. 2004) ("[The] established rules of deference foreclose all but the most limited review."). Unless a party can successfully move for vacatur, modification, or correction of an arbitration award, a court *must* confirm the arbitration award. 9 U.S.C. § 9 (2012); *see Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009).

Section 10(a) of the Federal Arbitration Act provides the exclusive grounds upon which a party may move to vacate an arbitration award. 9 U.S.C. § 10(a) (2012); *see Citigroup Glob. Mkts.*, 562 F.3d at 358 ("[T]he statutory provisions are the exclusive grounds for vacatur . . . ."). The four exclusive grounds for vacatur are:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

§ 10(a). "[T]he party moving to vacate an arbitration award under the FAA has the burden of proof." *Parker v. J C Penney Corp., Inc.*, 426 F. App'x 285, 288 (5th Cir. 2011). Furthermore, judicial review of an arbitration award is "very deferential," and when a court is reviewing whether an arbitrator exceeded his or her powers under § 10(a)(4), the "court . . . must resolve all doubts in favor of arbitration." *YPF S.A.*, 924 F.3d at 818–19. "An award may not be set aside for a mere mistake of fact or law." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012) (quoting *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007)).

When arbitration involves the interpretation of a contract, a reviewing court will confirm the arbitration award so "long as the arbitrator's decision 'draws its essence' from the contract." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994) (quoting *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990)). This standard of review applies even in cases where the reviewing court "disagree[s] with the arbitrator's interpretation of the underlying contract." *Id.* A

reviewing court "*must* affirm the arbitrator's decision if it is rationally inferable from the letter or the purpose of the underlying agreement." *Id.* (emphasis added). The "essence standard" provides great deference to the arbitrator's decision, but "an arbitrator's power is not unlimited." *Delek Ref., Ltd.*, 891 F.3d at 570. "An arbitrator cannot, for example, ignore the plain language of a contract." *Id.* Therefore, the very deferential standard of review for an arbitrator interpreting a contract means that a reviewing court "will uphold a decision that is rationally inferable" from the contract, "even if [the court] believe[s] the arbitrator seriously erred in his fact finding or contract interpretation"; however, an arbitrator's decision must "apply[] or interpret[] the agreement" rather than "rewrit[e] it." *Id.*

## III. Analysis

The Court's analysis in this case proceeds in two parts. First, the Court will address the primary issue presented in the Motions: whether the Court should vacate the arbitration award. The Court then turns to the issue of Gildan's request for its attorneys' fees and costs incurred as a result of this case.

### A. The Court Must Confirm the Arbitration Award Because the Arbitrator Did Not Exceed His Powers.

#### i. Ennis's Asserted Bases for Vacatur.

As a preliminary issue, the Court notes that Ennis attempts to move to vacate the arbitration award on two grounds: (1) that the arbitrator exceeded his powers by manifestly disregarding the law and the plain language of the operative agreements (i.e.,

§ 10(a)(4)) and (2) that the arbitrator was guilty of misbehavior which prejudiced Ennis's rights (i.e., § 10(a)(3)). After reviewing Ennis's briefs, the Court finds that, to the extent Ennis argues the Court should vacate the arbitration because of misbehavior that prejudiced Ennis's rights (§ 10(a)(3)), the arguments that incorporate such language are simply a restatement of the same arguments Ennis makes for vacatur under § 10(a)(4). Throughout its briefs, Ennis either refers to its § 10(a)(4) arguments separately, or, at most, Ennis makes references that the arbitrator's actions that exceeded his powers also were "misbehavior" that was prejudicial to Ennis's rights. Ennis does not make any independent argument for why vacatur is appropriate on solely § 10(a)(3) grounds. Part of the reason that Ennis may not make an independent argument for vacatur on § 10(a)(3) grounds is because most of the language of that subsection concerns purely procedural aspects of the arbitration proceeding. The two clauses preceding the language Ennis references, which is "any other misbehavior by which the rights of any party have been prejudiced," involve "misconduct" related either to an arbitrator's "refus[al] to postpone the hearing . . . or . . . to hear evidence pertinent and material to the controversy." § 10(a)(3); *see also Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006) (analyzing an argument for vacatur on § 10(a)(3) grounds by addressing whether there was "misconduct requiring vacation of an award," which requires conduct that "so affects the rights of a party that it may be said that [the party] was deprived of a fair hearing" (quoting *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001))). Ennis does not argue that

the arbitrator's *procedural* conduct deprived them of a fair hearing; Ennis argues instead that any misconduct by the arbitrator related to the arbitrator's analysis in coming to his decision. *See Laws*, 452 F.3d at 400. Furthermore, the Fifth Circuit requires that a party seeking vacatur on § 10(a)(3) grounds demonstrate that an arbitrator's misconduct resulted in "serious prejudice" to the party. *Hamel-Schwulst v. Country Place Mortg. Ltd.*, 406 F. App'x 906, 914 (5th Cir. 2010). The only prejudice that Ennis alleges it suffered is the arbitration award against it, which falls more in line with Ennis's § 10(a)(4) argument. Because Ennis does not make an argument directed specifically at § 10(a)(3), and because all of its arguments fall more in line with its § 10(a)(4) argument, the Court construes any reference by Ennis to prejudicial misconduct by the arbitrator to be an extension of Ennis's § 10(a)(4) argument.

Ennis's § 10(a)(4) argument for vacatur is that the arbitrator exceeded his power by manifestly disregarding the law and the plain language of the operative agreements. It is unclear in the Fifth Circuit whether, and to what extent, "manifest disregard of the law" remains a basis for vacatur. *See McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 F. App'x 208, 212 (5th Cir. 2016) (discussing "manifest disregard of the law," but only "[a]ssuming—without deciding—that manifest disregard of the law . . . fall[s] within 9 U.S.C. §10(a)(4)"). The Fifth Circuit has expressly held that "manifest disregard of the law" is not "an independent, nonstatutory ground for setting aside an award" in light of the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). *Citigroup Glob. Mkts.*, 562 F.3d at 358. On the other hand, the Fifth Circuit

has refrained from deciding whether manifest disregard of the law can serve as a *statutory* ground for vacatur, serving as an aspect or example of when an arbitrator exceeds his or her power under § 10(a)(4). *McKool Smith*, 650 F. App'x at 212. Because this Court ultimately finds that Ennis fails to demonstrate that vacatur is appropriate even if the Court considered manifest disregard of the law to be an aspect of § 10(a)(4), the Court assumes for purposes of this Order that manifest disregard of the law is grounds to vacate an arbitration award.

To the extent manifest disregard of the law is a vehicle for vacatur, the Court first notes "that manifest disregard of the law 'mean[s] more than error or misunderstanding with respect to the law.'" *Id.* at 212–13 (quoting *Prestige Ford v. Ford Dealer Comput. Servs., Inc.*, 324 F.3d 391, 395 (5th Cir. 2003)) (discussing the Fifth Circuit's interpretation of manifest disregard of the law in its pre-*Hall Street* opinions). Manifest disregard of the law "mean[s] that 'the arbitrator appreciate[d] the existence of a clearly governing principle but decide[d] to ignore or pay no attention to it.'" *Id.* at 213 (second and third alteration in original) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986)). Even if an arbitrator manifestly disregards the law, "under [the court's] deferential review of arbitration awards, [the court] [does] not vacate an award absent a finding 'that the award resulted in a "significant injustice."'" *Id.* (quoting *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 355 (5th Cir. 2004)).

In arguing that the arbitrator exceeded his powers by manifestly disregarding the law in coming to his decision, Ennis references another doctrine in judicial review of arbitration: the "essence test." Ennis suggests in its briefing that the essence test is an aspect of § 10(a)(4): An arbitrator does not exceed his or her powers so long as the arbitrator's decision draws its essence from the contract in dispute. Upon review of the caselaw, it is not apparent whether the essence test is in fact an aspect of § 10(a)(4). *See, e.g., Delek Ref., Ltd.*, 891 F.3d at 569–70 (discussing the essence test without reference to any of the grounds for vacatur under § 10(a)); *Executone*, 26 F.3d at 1324–25 (describing the operation of the essence test without any reference to § 10(a)). However, the Fifth Circuit still analyzes arbitrator's decisions involving contract interpretation under the essence test even after the Supreme Court's decision in *Hall Street*. *See, e.g., Delek Ref., Ltd.*, 891 F.3d at 569–73. Recognizing that the essence test is still a valid standard in the Fifth Circuit, this Court finds that it is an aspect of § 10(a)(4) when contract interpretation is a part of the arbitrator's decision. *See Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802–03 (5th Cir. 2013) ("Thus, the substantive question of whether an arbitrator has exceeded his arbitration powers is a function of our highly deferential standard of review in such cases: an arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties—the 'essence' of the contract.").

The question before this Court therefore is a twofold one (which need not be answered in any particular order) for which Ennis, the party moving to vacate the arbitration award, bears the burden of proof:

> (1) Did the arbitrator's decision draw its essence from the relevant contracts in dispute?; and

> (2) Did the arbitrator manifestly disregard the applicable law in his decision?

*See Parker*, 426 F. App'x at 288 ("[T]he party moving to vacate an arbitration award under the FAA has the burden of proof."). If the answer to the first question is "yes," and the answer to the second question "no," then this Court must confirm the arbitration award. *See* 9 U.S.C. § 9 (2012).

> **ii. The Arbitrator's Decision Drew Its Essence from the Relevant Contracts, and the Arbitrator Did Not Manifestly Disregard the Applicable Law.**

The Court first addresses whether the arbitrator's decision drew its essence from the Employment Agreement, Assignment, and Purchase Agreement. Ennis argues that the arbitration award does not draw its essence from these contracts because an arbitration award that "ignore[s] the plain language of the contract" does not pass the "essence test." *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("The arbitrator may not ignore the plain language of the contract . . . ."). By reading "Company" to mean A&G instead of Ennis for "Change of Control Events,"

Ennis argues that the arbitrator ignored the plain language of the Employment Agreement and thus the arbitration award did not draw its essence from the Employment Agreement.

The "essence test" is not a standard that supposes that there is only one correct interpretation of a contract. *See id.* ("The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); *Timegate Studios*, 713 F.3d at 802–03 ("[A]n arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties— the 'essence' of the contract."). Here, if the Employment Agreement was the only contract relevant to the dispute before the arbitrator, a substitution of "A&G" for "Ennis" throughout the Employment Agreement might demonstrate a case where the arbitrator's decision did not draw its essence from the Employment Agreement. Such a situation is not the case here, as the Assignment inserted A&G into the contractual-interpretation analysis. The Purchase Agreement also informed the arbitrator's decision, as the arbitrator read Section 5.10(b) of the Purchase Agreement, the section entitled "Irshad Ahmad," as evidence that "Gildan and Ennis did not ignore Ahmad's status." The essence test does not mandate that the arbitrator read the Employment

Agreement in a vacuum, blind to the effect of the Assignment and Purchase Agreement. The Assignment and Purchase Agreement instead provided useful insight as to the "evident purpose and intent" of Ennis and Ahmad when they contracted for Ahmad's severance payment in the Employment Agreement. *See Timegate Studios*, 713 F.3d at 803 (explaining that an arbitrator's even more expansive remedial power still "hinges upon the 'aims, 'wording and purpose,' and 'essence' of the underlying agreement"). Far from ignoring the plain language of the Employment Agreement, the arbitrator's decision was "derived from the wording or *purpose* of the [Employment Agreement]." *Executone*, 26 F.3d at 1325 (emphasis added) (quoting *Bhd. of R.R. Trainmen v. Cent. of Ga. Ry.*, 415 F.2d 403, 412 (5th Cir. 1969)). This Court therefore finds, especially in light of the "exceedingly deferential" review of an arbitrator's interpretation of a contract, that the arbitration award drew its essence from the relevant contracts at issue in the dispute. *See Delek Ref., Ltd.*, 891 F.3d at 569–70 (quoting *Brabham*, 376 F.3d at 380).

The Court turns next to the argument to which Ennis devotes most of its briefing: whether the arbitrator manifestly disregarded the applicable law when he substituted "A&G" for "Ennis" for purposes of a "Change of Control Event." Ennis argues that the arbitrator manifestly disregarded applicable Texas law by not following the holding of *Capitan Enterprises, Inc. v. Jackson*, 903 S.W.2d 772 (Tex. App.—El Paso 1994, writ denied). The general principle of *Capitan* to which Ennis references is a straightforward one: "[A]n assignment is intended to change only *who* performs an

obligation, not the obligation to be performed." *Id.* at 776. Ennis now reasserts in this Court the argument it made to the arbitrator: By substituting A&G for Ennis in the context of "Change of Control Events," the arbitrator changed the obligation to be performed, not just who performs the obligation. Because Ennis pointed the arbitrator to *Capitan* and argued that the holding of *Capitan* was controlling in this case, and the arbitrator still ruled against Ennis in his arbitration award, Ennis now claims that the arbitrator's decision reflects a manifest disregard of the law.

To the extent manifest disregard of the law is still a basis for vacatur, *see McKool Smith*, 650 F. App'x at 212, the Court is unpersuaded that the arbitrator manifestly disregarded the applicable law in this case. Manifest disregard of the law "mean[s] that 'the arbitrator appreciate[d] the existence of a *clearly governing principle* but decide[d] to *ignore or pay no attention to it*.'" *Id.* at 213 (second and third alteration in original) (emphases added) (quoting *Merrill Lynch*, 808 F.2d at 933). This Court acknowledges the general principle referenced in *Capitan*: "[A]n assignment is intended to change only who performs an obligation, not the obligation to be performed." *Capitan*, 903 S.W.2d at 776 (emphasis omitted). Ennis, however, suggests that *Capitan* stands for a more specific "clearly governing principle" that would preclude an interpretation of the Employment Agreement that changed the meaning of "Company" for purposes of a "Change of Control Event" after the Assignment. According to Ennis, the *Capitan* court's holding precluded the arbitrator in this case from interpreting "Company" to mean A&G after the Assignment because such interpretation changed the nature of the

benefit or obligation, not just who received or performed the benefit or obligation. The Court finds this argument lacking merit for at least two reasons.

First, this Court is unconvinced that the El Paso Court of Appeals intended to set forth a "clearly governing principle" when it applied the law concerning assignments to the facts in *Capitan*. The *Capitan* court's analysis is a paragraph long, and its decision directly stemmed from the facts of that case and its own contractual interpretation. *See id.* ("We believe that the same rule should apply equally to the other party to the original contract; its rights are neither enhanced nor diminished by the assignment. Here, the trial court's acceptance of Jackson's theory resulted in a judgment which dramatically altered the obligation undertaken and consideration accepted under the 1971 contract; a result clearly not contemplated by any party when the contract was entered into. To allow this construction to stand would result in a [sic] unreasonable, oppressive, and inequitable result, which we must avoid."). Rather than set forth a clearly governing principle that the Assignment in the instant case cannot lead to an interpretation of the Employment Agreement that "Company" means A&G for purposes of a "Change of Control Event," *Capitan* could be read to suggest the opposite result: After an assignment occurs that affects who benefits from or performs an obligation under a preexisting contract, the court should not interpret the preexisting contract in a manner that either "dramatically alter[s] the obligation undertaken" or produces "a result clearly not contemplated by any party when the contract was entered into." *Id.* A court should avoid an interpretation of the preexisting contract that "would

result in a [sic] unreasonable, oppressive, and inequitable result." *Id.* In his Partial Final Award, by stating that "contracts should not be read to reach an absurd result," the arbitrator reached a decision that was more likely "contemplated by [the] part[ies] when the contract was entered into" and did not "result in a [sic] unreasonable, oppressive, and inequitable result." *See id.* This Court does not find that the holding of *Capitan* mandated the arbitrator's decision in this case; the Court simply concludes that *Capitan* does not stand for Ennis's suggested "clearly governing principle."

Second, nothing in the arbitrator's Partial Final Award suggests that he ignored or paid no attention to the clearly governing principles, if any, of *Capitan. See McKool Smith*, 650 F. App'x at 213. The arbitrator explicitly references *Capitan*, quotes the general law governing assignments in his Partial Final Award, and then explains that Ennis's application of *Capitan* to this case was unpersuasive. Despite Ennis's suggestions to the contrary, the arbitrator's decision does not demonstrate that he "recognized the applicable law and then ignored it," let alone demonstrate any manifest disregard of the law "clear[ly] [in] the record." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)).

Ennis's two other arguments taken with the arbitrator ((1) Gildan's failure to provide notice and (2) the use of escrow funds to reimburse Gildan) fail as well. These positions related to the purported failure by the arbitrator to interpret "Change of Control Event" properly, and the arbitrator sufficiently addressed both these points.

As to Gildan's failure to provide notice, the arbitrator explained that because Ennis was able to fully and completely litigate its position in arbitration, Gildan's failure to provide timely notice did not result in the forfeiture of any rights or defenses by Ennis. As to the reimbursement of Gildan through the escrow funds, the arbitrator concluded from language in the recitals of the Escrow Agreement that the severance payment to Ahmad, along with the resulting arbitration between Ennis and Gildan, resulted in the final adjudication of a "Claim" for which Ennis had agreed to indemnify Gildan.

Because Ennis fails to demonstrate that the arbitrator's decision did not draw its essence from the underlying contracts or that the arbitrator manifestly disregarded the law, and because Ennis's other arguments related to its primary argument about the arbitrator's contract interpretation, the Court must confirm the arbitration award in this case. Accordingly, the Court hereby **DENIES** the Motion to Vacate and **GRANTS** the Motion to Confirm.

## B. Gildan's Request for Attorneys' Fees and Costs Incurred in Responding to Ennis's Motion to Vacate.

In its Motion to Confirm and briefing, Gildan requests its attorneys' fees and costs incurred in responding to the Motion to Vacate. Other than one mention that an award of attorneys' fees and costs is appropriate because Ennis "improper[ly] attempt[ed] to re-litigate the underlying arbitration through its groundless motion to vacate the valid awards," Gildan does not brief why it is entitled to such relief. The Court therefore defers ruling on Gildan's request for attorneys' fees and costs and

**ORDERS** Gildan to file supplemental briefing in support of its request for attorneys' fees and costs pursuant to the deadlines set forth below.

## IV.    Conclusion

Because Ennis fails to demonstrate that the arbitrator's decision did not draw its essence from the underlying contracts or that the arbitrator manifestly disregarded the law, the Court **DENIES** the Motion to Vacate, **GRANTS** the Motion to Confirm, and **CONFIRMS** the arbitration award in this case. The Court defers ruling on Gildan's request for attorneys' fees and costs incurred in responding to the Motion to Vacate and **ORDERS** Gildan to file supplemental briefing in support of its request within **fourteen (14) days** of this Order. Ennis must file its response, if any, within **seven (7) days** of Gildan's filing of its supplemental briefing. There shall be no reply from Gildan unless otherwise ordered by the Court.

**SO ORDERED.**

July 9th, 2019.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE